# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | :　**CRIM. NO. 24-cr-137** |
| | : |
| **TYRONE WISE** | : |
| | : |

## DEFENDANT'S SENTENCING MEMORANDUM

The instant offense occurred as part of the George Floyd protests in late May and early June of 2020. It was a time of civil unrest when this country was trying to come to terms with both an unprecedented pandemic and a history of racial discrimination and oppression. After months of seeing black and brown people in lower income neighborhoods dying from COVID-19 at a higher rate than those in wealthier and whiter neighborhoods, many communities erupted when an unarmed black man, George Floyd, was murdered by a white police officer on May 25, 2020.[1] Protests against police brutality and racism occurred nationwide, indeed globally. Looting and rioting also accompanied some of these protests.

Philadelphia had its own share of protests and demonstrations, some of which remained peaceful and some of which were met by police-deployed tear gas, plastic pellets, bean bags, and flash grenades. Indeed, on May 31st, just hours before Mr. Wise engaged in the instant offense, Philadelphia police deployed CS gas against civilians in the area of 52nd Street between Arch and Spruce Streets at 4:45 p.m., 5:30 p.m., 5:45 p.m., and 6:39 p.m. Pepper balls were deployed at

---

[1] Derek Chauvin, the officer, was later convicted of state murder and manslaughter charges and of violating Floyd's civil rights. Steve Karnowski, AP NEWS, *Chauvin murder conviction upheld in George Floyd killing*, Apr. 17, 2023, *available at* https://apnews.com/article/chauvin-murder-appeals-court-6941a6074dcc310c85e4f3eab2be97eb (last visited Dec. 31, 2024).

5:00 p.m. and 5:45 p.m.[2] Everyone in the neighborhood, even those who simply lived in the area and were neither protesting nor looting, felt the impact of the caustic gas. A few hours later, and just a few blocks away, Tyrone Wise joined the many individuals engaged in looting and property damage in Philadelphia and all over the country.

Without doubt, Mr. Wise's actions were criminal. But his actions cannot be divorced from the unique context in which they occurred. Mr. Wise pled guilty and accepted responsibility for this offense. While his offense resulted in significant property damage, it did not result in any people being injured and insurance policies ensured that the victim business was fully reimbursed. The Presentence Investigation Report (PSR) sets the advisory guidelines at 46-57 months' imprisonment, which is adjusted to 60 months due to the mandatory minimum sentence required by statute. PSR ¶ 102. Mr. Wise is currently serving a state sentence for an unrelated offense that occurred after the instant offense. As he is a state prisoner that is in federal custody on a writ, he is not receiving any federal time credit for his time incarcerated at the Federal Detention Center. The defense respectfully submits that a sentence of 60 months, to run fully concurrently with his state sentence, would be sufficient, but not greater than necessary, to comply with the sentencing purposes detailed in 18 U.S.C. § 3553(a). Such a sentence would keep Mr. Wise in prison well past the minimum date for the state sentence he is currently serving. In other words, it will prevent him from receiving parole. The defense also respectfully requests that he be permitted to serve his federal sentence in the state institution to which he had been assigned.

---

[2] *See* Office of City Controller, *Independent Investigation into the City of Philadelphia's Response to Civil Unrest* at 14 (Jan. 2021), available at https://controller.phila.gov/wp-content/uploads/2021/01/Civil-Unrest-Report-Final.pdf (last visited Dec. 30, 2024).

I.    **PROCEDURAL HISTORY**

On April 4, 2024, nearly four years after the offense, a federal grand jury sitting in the Eastern District of Pennsylvania returned a one-count Indictment charging Mr. Wise with malicious damage by means of fire of a building used in interstate commerce, in violation of 18 U.S.C. § 844(i). On September 3, 2024, Mr. Wise pled guilty pursuant to a guilty plea agreement under Fed. R. Crim. Pro. 11(c)(1)(C) in which the parties agreed to a term of imprisonment of 60 months. The government agreed to recommend that 12 months of the sentence in the instant case run concurrently with Mr. Wise's current state sentence. The defense reserved the right to request a fully concurrent sentence. Sentencing is scheduled for January 7, 2024.

II.    **TYRONE WISE'S PERSONAL HISTORY**

Tyrone Wise in a lifelong Philadelphian who has endured a tumultuous upbringing and transformed such experiences into motivation to being a protective and loving father and partner. Born on March 27, 1990, in Philadelphia, Tyrone was one of three children of Tyrone Wise Sr. and Karen Edwards. His father's frequent incarcerations alongside his mother's struggles with bipolar disorder and substance abuse created an unpredictable, neglectful, and abusive environment.

While Tyrone's mother had periods of sobriety and stability, her relapses and mental health episodes caused her to beat her children with belts, sell their belongings in order to buy drugs, and allow her boyfriend, Kirby, to physically harm her children. PSR ¶¶ 65-66. On one occasion, she hit Tyrone in the knee with a baseball bat for trying to protect his then 11 year-old brother, Kyree. ¶ 66. Tyrone's father, who also abused drugs, could be a "fun dad" but also neglected basic parental responsibilities, and even "purposefully" went to jail before Christmastime to avoid giving the children presents. PSR ¶ 72.  A Pennsylvania Court Summary

reveals that Tyrone's father was arrested and/or incarcerated when Tyrone was two, seven, ten, and twelve-years old.[3]

Due to his mother's explosive episodes and his absent father, Tyrone and his siblings underwent periods of displacement and foster care. At one point, he was placed in the care of his great-aunt Dorothy Perran in Savannah, Georgia, under the supervision of Pennsylvania's Department of Human Services. PSR ¶ 63-64. DHS records show that in 1996 and from 2002 to 2007, Tyrone was committed to DHS through dependency petitions because of the inability of his parents to provide care.[4] In 2007, shortly after his mother regained custody of Tyrone and his siblings from DHS, she abandoned them: "I just came home from school one day and she was gone." PSR ¶ 67. Tyrone took it upon himself to become Kyree's primary caretaker, and began working while still attending school as a 17 year-old.

Given this unstable childhood with parents who were drug addicts and who suffered from mental health disorders, it is unsurprising that Tyrone himself at times struggled with drugs and depression. In his teens and 20's, Tyrone regularly used marijuana, leading to various arrests linked to the possession of a small amount of marijuana. PSR ¶¶ 83, 37-42. As a teenager and in his early 20's, Tyrone experienced two hospitalizations for mental health reasons. One was due to a fight with a peer at a placement center. The other occurred when he was 23-years-old and had tried to commit suicide by overdosing on oxycodone. PSR ¶ 81. He put himself in a coma and woke up in a hospital strapped to a bed. Shortly after that experience, he discovered that his then-girlfriend, Charmaine King, was pregnant. His brush with death and the birth of his

---

[3] A Court Summary showing the record of Tyrone's father is attached as Exhibit E.

[4] Records attached as Exhibit D.

daughter Hailey motivated him to change his ways. He focused on finding steady employment and staying out of the street.

Because of his experience with his own parents, as an adult Tyrone has prioritized caring for his family. Tyrone is very close with and proud of his four children: Za'Nylah Wise, 12; Hailey Wise, 11; Nassim Wise, 6; and Ma'Nijlah Emerson, 5. PSR ¶ 69.[5] He did not know that he was Ma'Nijlah's father until she was two-years old. He was contacted by DHS who asked him to take a paternity test. When it revealed that he was Ma'Nijlah's father, he and his wife Amber Palmer petitioned the Court and did everything necessary to get her out of foster care and into their home. PSR ¶ 69 n.19. Mr. Wise also plays an active role in the lives of his three stepchildren from his marriage to Amber Palmer. Despite his incarceration, Tyrone remains deeply connected to his children, maintaining regular communication through calls and photo messages. PSR ¶ 70.

Tynita Russell, Tyrone's older sister, has written a letter to the Court not only describing the unstable upbringing that they had, but also describing the adult that Tyrone has become – one that is devoted to his family and his community.[6] Of note, she describes how Tyrone has sought to be a good community member through good drives, coat drives, and other volunteer events organized by his truck/motorcycle club.

Up until his incarceration, Tyrone was able to financially support his children by working steadily, both in the food industry and in manual labor. PSR ¶ 93-96. He also started and/or ran his own business – first he took over his father's contracting business and then he and his wife

---

[5] Pictures of Mr. Wise with his children are attached as Exhibit B.

[6] Tynita Russell's letter and picture that she included are attached as Exhibit A. A letter from Tyrone's brother Sharif is attached as Exhibit C.

starting a trucking business. PSR ¶ 91-92. Upon his release, Tyrone and Amber hope to build a

stable future for their family by relocating to Savannah, Georgia, and continuing to run their

trucking company. PSR ¶ 71.

### III. SENTENCING CONSIDERATIONS AND GUIDELINES

As set forth by the Third Circuit in *United States v. Flores-Mejia*, 759 F.3d 253 (3d Cir.

2014), a sentencing court must, in every case,

> First . . . calculate a defendant's Guidelines range…Second, [it] must
> formally rule on the motions of both parties and state on the record
> whether they are granting a departure… Third, [the court] is required
> to exercise its discretion by considering the relevant § 3553(a)
> factors…To satisfy step three, the [sentencing] court must
> acknowledge and respond to any properly presented sentencing
> argument which has colorable legal merit and a factual basis.

*Id* at 256 (internal citations and quotation marks omitted). The overarching goal of this three-part

process is the imposition of a sentence "sufficient, but not greater than necessary," to achieve the

goals of sentencing.  See 18 U.S.C. § 3553(a)[7]; *Kimbrough v. United States*, 552 U.S. 85, 101

(2007).

The PSR calculates Mr. Wise's total offense level as 21 (PSR ¶ 33) and his criminal

history category as III (PSR ¶ 47). The resulting advisory guideline range is 46 to 57 months.

PSR ¶ 102. Count 1 carries a mandatory minimum sentence of 60 months. *Id.*

---

[7] The sentencing factors set forth in § 3553(a) include:
- the nature and circumstances of the offense and the history and characteristics of the defendant;
- the kinds of sentence available;
- the Guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range;
- the need to avoid unwarranted sentencing disparity; and
- the need to provide restitution where applicable.

18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

Defense respectfully submits that Mr. Wise's criminal history score over states the seriousness of his prior criminal history. Two of his criminal history points (PSR ¶¶ 37 & 39) are due to the possession of a small amount of marijuana, an offense that has been decriminalized in many jurisdictions. Indeed, on December 22, 2023, President Biden issued a pardon for all individuals who had been federally convicted of such an offense. Additionally, one of Mr. Wise's prior criminal history points (PSR ¶ 35) is for a criminal trespass offense that occurred when he was 19 years old, more than ten years prior to the instant offense, for which he received a sentence of probation. The offense consisted of several teenagers breaking into a house, whose owner had died, in order to throw a party. They had moved the furniture to the street and had no intention of stealing anything, as confirmed by the conviction for trespass only. While this prior conviction technically has not lapsed because the probationary sentence was imposed within 9.5 years of the instant offense, the age and nature of the prior conviction discounts its seriousness.

The only prior conviction which warrants concern is Mr. Wise's prior conviction for aggravated assault. PSR ¶ 43. The trial transcript from that case reveals that Mr. Wise was reacting out of concern for his wife. His wife was in an argument with the victim/neighbor who had just called her a name that was derogatory towards Muslim women. Additionally, medical records and photographs submitted at trial reveal that the victim's injuries were not severe. He was released from the hospital the same day that he was admitted and records indicate he suffered a single fractured rib – a type of injury that can be caused by contact sports or a bar fight. Photographs of the victim taken by police after the incident show only minimal bruising and scrapes.[8]

---

[8] The excerpt from the trial transcript in which the victim admits to calling Amber Palmer a "mummy" is attached for the Court's convenience. Exhibit F. Due to privacy concerns, in lieu of

## IV.    STATUTORY FACTORS

### A.  Application of the 3553(a) Factors to Mr. Wise's Case

Mr. Wise's acceptance of responsibility for his actions and his personal history are relevant to many of the § 3553(a) factors that the Court considers in crafting a just and fair sentence. In applying Mr. Wise's unique circumstances to the statutory factors, a fully concurrent sentence is appropriate in this case.

1. *The nature and circumstances of the offense and the history and characteristics of the defendant.*

Tyrone Wise's actions on the night of May 31, 2020, must be considered in relation to the extraordinary circumstances from which they arose. His engagement with violent protest followed the onset of the COVID-19 pandemic, shocking displays of police brutality, and high community tensions on May 31st itself. The pandemic brought renewed instability to Tyrone's life as he lost his job at Whitetail Disposal, significantly impacting his ability to provide for his family. While Amber still worked, the loss of the family's primary source of income was taxing, especially on the children. In addition to the financial burdens, Tyrone suffered the loss of his grandfather and multiple friends to COVID-19.

While the pandemic triggered universal challenges, Black communities were especially devastated as they suffered from the pandemic's highest mortality rates alongside a string of highly publicized police shootings of people of color. Wise spoke to the fear incited by these killings: "Everywhere you looked, Black people were getting killed. Everyone was scared to even get pulled over; you didn't know if you were gonna make it back to your family."

---

attaching the complainant's medical records and photographs to this filed document, the defense will bring copies to the sentencing proceeding.

Compounded with the staggering inequalities unveiled during the COVID crisis, George Floyd's murder triggered Tyrone to take to the streets and act, alongside many others, in ways that he normally would not have. He was driven by fear, anger, and a need to show that his life and the lives of those who look like him matter and that they could not be disregarded without consequence.

Tyrone's actions on May 31st targeted a business perceived as exploitative of the poorer, Black community surrounding it. He acknowledges the harm caused to the victim business and regrets the impact on jobs and livelihoods. Notably, Tyrone directed his actions at property – not at physically harming individuals. He believed that the apartments above the pharmacy were not populated, and he left the medication that he took from the pharmacy on the sidewalk outside so that others could take them.[9] Thankfully, Tyrone's actions did not cause bodily harm to anyone and the financial loss to the victim business was fully covered by insurance policies. Tyrone has reflected on the consequences of his actions and is sorry for the harm caused. He understands that there is purpose in his imprisonment and punishment and accepts responsibility for his actions.

Given the unique circumstances of the offense, Tyrone's relatively minor criminal history, and the childhood that he overcame in order to be a loving and providing parent himself, a fully concurrent sentence, which would keep him incarcerated well past his parole eligibility date on his state sentence, is warranted.

---

[9] A video recording from the pharmacy's security system, at approximately 20:49:40 p.m., shows Tyrone Wise leaving the trashcan in which he had gathered medication outside on the sidewalk and departing without any items from the pharmacy

2. *To reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense.*

A sentence of 60 months, which is above the calculated guideline range, would be a significant sentence that accounts for both the property damage caused, the unique circumstances of the offense, and Tyrone's own history and characteristics.

3. *To afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.*

A sentence of 60 months would also provide for adequate deterrence and protect the public from further crimes by Tyrone. Given the unique circumstances, the George Floyd protests, during which this offense occurred, there is no chance that Mr. Wise would ever engage in this behavior again. Additionally, given the communal feelings that drove the protests and the looting that occurred in late May and early June of 2020, there is little possibility that a greater sentence would have any deterrent effect. Finally, it is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect.[10] The mandatory minimum sentence would satisfy this sentencing factor.[11]

---

[10] Academic literature universally accepts that certainty of punishment, and not severity of punishment, is the most effective general deterrent. *See, e.g.*, Cesare Beccaria, *On Crimes and Punishments and Other Writings* 63 (Richard Bellamy, ed.; Richard Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 Legal Stud. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, in Crime 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 Criminology 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 Stan. L. Rev. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?*, 100 J. Crim. L. & Criminology 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.").

[11] There is also growing evidence that longer prison terms do not have a greater specific deterrent effect than lesser ones.  Daniel S. Nagin, Francis T. Cullen, & Cheryl Lero Jonson, *Imprisonment*

4.  *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Wise has skills as a laborer and was trying to complete parenting, anger management and other educational and vocational programs while in the custody of the Pennsylvania Department of Corrections. This federal prosecution interrupted his ability to take and complete those classes. A fully concurrent sentence would allow Mr. Wise to return to the DOC and engage in such classes once again.

### B.  Kinds of Sentences Available

The range of sentences statutorily available to the Court are listed in Part D of the PSR. There is a mandatory minimum sentence of 60 months required on Count 1. PSR ¶ 101. A fully concurrent sentence is certainly an available sentence.

### C.  The Need to Avoid Unwarranted Disparities

A sentence of the mandatory minimum sentence to be served concurrently would not result in an unfair and unwarranted disparity due to the unique circumstances of this case. The Court should bear in mind that § 3553(a)(6)'s command to avoid unwarranted disparities carries with it "the need to avoid unwarranted *similarities*." *Gall v. United States*, 552 U.S. 38, 55 (2007) (emphasis in original). Where, as here, a defendant's circumstances warrant a lower sentence than that imposed on a defendant charged with a similar crime, the difference between the sentences is warranted and just. *See Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1252 (2011) (Breyer, J., concurring) ("A just legal system seeks not only to treat different cases

---

*and Reoffending*, 38 Crime & Just. 115, 178 (2009) ("[A] key finding of our review is that the great majority of studies point to a null or criminogenic effect of the prison experience on subsequent offending.  This reading of the evidence should, at least, caution against wild claims . . . that prisons have special powers to scare offenders straight.").

differently but also to treat like cases alike. Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences.").

### D. The Need to Provide Restitution to Any Victims of the Offense

Restitution is due to the insurance companies who, pursuant to their contractual obligations and based on the premiums they had been paid, fully compensated the victim business. PSR ¶ 18.

## V.    CONCLUSION

Based on the above stated reasons, the defense respectfully requests that this Court impose a sentence of 60 months' imprisonment to run concurrently with the state sentence Mr. Wise is currently serving.


Respectfully submitted,

DATE: December 31, 2024          */s/ Susan M. Lin*

Susan M. Lin
KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
(215) 925-4400
(215) 925-5365 (fax)

*Counsel for Tyrone Wise*

# EXHIBIT A

Tynita Russell
1321 W. 8th Street
Wilmington, DE 19806
Tynita1@hotmail.com
Mobile: 302.740.4120

December 24, 2024

Senior Judge Timothy Savage
United States District Court for the Eastern District of Pennsylvania

SUBJECT: Character Statement for Tyrone Dennis Wise Jr. (DOB 03.27.1990)

Your Honor,

My name is Tynita Dorenda Russell (née Wise), and I am writing this reference letter requesting leniency on behalf of my little brother Tyrone Dennis Wise Jr. I understand that there are serious charges against him, and he is now subject to the consequences of such actions. Tyrone is remorseful about the offense, however, that is secondary to how displeased he is of himself, having let down his family. I am an Assistant Director of Transportation at SEPTA having joined the authority after separating from the United States Navy. As a sibling, I've known Tyrone his whole life as I am 5 years older. I believe I can provide insight to whom my brother is and how he is so much more than the baneful upbringing we experienced growing up. Along with how I believe this same upbringing molded him to be a responsible person in our community.

There are 6 siblings total, and our parents became substance abusers (even before Tyrone was born) during the "Crack Epidemic of the 80's". We faced many challenges including unstable living conditions and food insecurities. Although both parents are currently functioning addicts our mother Karen Edwards at times had periods when she remained sober and was a mother. Unfortunately, she also suffers from mental illness. Having been diagnosed with bipolar 1 and schizophrenia, she has had multiple suicide attempts. This Our father Tyrone Dennis Wise Sr. on the other hand is a decorated Marine, human calculator, Master Plumber and is skilled beyond measure... However, I cannot recall a single period when he was sober. He has been "dry" due to being incarcerated but never sober as a choice. Sometimes we had 1 good parent but more often we had none and from there the streets raised us. Our parents tried but was never able to shake the hold drugs has on them. When we were very young family members took us in. Nobody ever took us all at once and we were ultimately split up. I will never forget how they asked for money to take care of us and chose not to when there wasn't anything for them to gain. Both parents had many rehab and jail stents. As we became teenagers people cared less, and we were on our own.

Tyrone was diagnosed with ADHD as a child, and he did not receive the proper therapies due to the fact the nobody was there to be the proper medical liaison for Tyrone. He struggled with being misdiagnosed with learning disabilities only to find out that he simply needed glasses (bifocals at that). He was put on

medication and became withdrawn. He was always a quiet, soft-spoken individual who often kept to himself the medication intensified this.

We all barely made to adulthood but took different paths. I feel guilty sometimes for joining the military, but I chose me and left. Tyrone and our youngest brother found a home within a motorcycle/truck club. That's were Tyrone really started to flourish. There is where I noticed that he truly believed in the importance of a family. Ever since he got married, he has focused on creating a strong bond among our actual family members. To reconnect and let go of past heartache and not be estranged from them. He acknowledged the abandonment we received and harbored no ill feelings towards them. That is something I continue to struggle with to this day.

Tyrone assisted our father and created Wise (Work, Industry, Servicing Everything) Construction Company. Our dad taught Little Tyrone everything he knew. He convinced our dad that underpricing his services for his next "hit" was not the best choice. Insisting that our dad utilize the Veteran Affairs resources available to him. With the motorcycle/truck club Tyrone began giving back to the community. Seasonal recurring events such as food drives, back to school backpack give aways, coat drives, feeding the homeless and volunteered at the PAL and other youth sports programs. He coordinated with other club members to assist seniors within the community with transportation to doctors' appointments and completing errands. Everyone loves him from seniors to little kids.

As a parent Tyrone became the father we never had growing up. He even positioned the courts to obtain full custody of his youngest daughter MaNijlah Emerson. This included completing parenting classes along with his wife Amber Wise. He loves the outdoors and takes neighborhood kids along with his 4 children fishing often. His kind heart became more prevalent when our mother became sick with a mystery illness. With his wife he took her in and coordinated appointments to deal with the dementia symptoms that ultimately turned out to be advanced HIV. He built a relationship with her infectious disease team, and I am pleased to say that with his follow through she is now undetectable.

I am familiar with Tyrone's general behavior and character. He often shows good behavior. Therefore, I do not consider as someone who's actions would be inimical to community interests. As such, I offer this letter in support of him. I believe he is a person of integrity. He has proven beyond doubt that he is responsible. I hope that you take my reference letter into consideration as you continue with the court proceedings. If you need more information on my brother, please contact me via email.

Thank you for considering my request,

Tynita Russell


















  

Wise Construction co.

Roofing, Siding, Plumbing, Electrical, Masonry, Painting, Moving, Hauling, Clean Outs, Flooring, Drain Cleaning, carpentry, Power Wash And So Much More

Make The Wise Choice
Contact Info

W.I.S.E.
Work, Industry, Servicing, Everything,

Call us @ Mr. Wise (215)-200-1634
Email us @ T.nise23@gmail.com

# EXHIBIT B











**Totc Nyce**
Sep 6, 2022 · 👥

My two youngest

👍❤️ 39                                          5 comments

👍 Like          💬 Comment          ➤ Send





# EXHIBIT C

**Gmail**

**Susan Lin <slin@krlawphila.com>**



Subject: Re: Sentencing and Letter Information
To: Danielle Kaufman-Sedano <dksedano@krlawphila.com>

Tyrone Wise has had a rough upbringing. His mother Karen Edward's has been battling substance abuse for many years. She has currently contracted the HIV virus which has had a great impact on Tyrone's life. Tyrone is very generous and will give the T.shirt off of his back to help those in need. I am Tyrone's brother and I know him very well. Yes he has remorse for his actions. He is a loving father to his children and a loving brother. He was actually going through a custody battle trying to get custody of his daughter Manaila. He is married and is a loving husband. He is respected in his community among his piers as a leader and has a great impact on his community. Tyrone has often given food to the homeless every Wednesday of every week with his truck club. He has been diagnosed with adhd at a young age and has been on medication for years. He is an outstanding pillar in the community and will be more beneficial free than incarcerated. Tyrone has a great work ethic and loves to work and help his family and friends especially his children.

# EXHIBIT D

DHS

# JACS

| Home | FJD Intranet |
|------|--------------|

Juvenile History                                    Next Screen [                    ▼]

TYRONE WISE                     PPN: 0938052              J Number: 32605102
6606 LEEDS STREET                                        SSN:  159726003
PHILADELPHIA  PA               Phone: 215 467-5875       Sex: M   Race: B
PLA/DET Status:                                          Date of Birth: 03/27/90
Mother:  KAREN EDWARDS         Inst. PO:                 Arrest Date:
Father:  TYRONE WISE           PO:                       Filing Date: 02/28/96
Petition Number: D52919602     DC Number:                SID Number:  26087571   OTN:

| Grade | Sec # | Charge Description | | Grade | Sec # | Charge Description |
|-------|-------|--------------------|---|-------|-------|--------------------|
|       |       | INABILITY PAR/CUST PROV | | | | |

| Date | Disposition | Judge or Master |
|------|-------------|-----------------|
| 12/17/96 | DISCHARGED FROM SUPERVISION | HONORABLE NICHOLAS DALESSANDRO |
| 06/27/96 | ADJUD DERERRED/DHS SUPV. | HONORABLE NICHOLAS DALESSANDRO |
| 04/24/96 | TEMPORARY COMMITMENT TO DHS | HONORABLE GWENDOLYN BRIGHT |
| 03/12/96 | TEMPORARY COMMITMENT TO DHS | HONORABLE NICHOLAS DALESSANDRO |

# JACS

| Home | FJD Intranet |
|------|--------------|

Juvenile History                               Next Screen [                    ▾]

TYRONE WISE                    PPN: 0938052          J Number: 32605102
6606 LEEDS STREET                                   SSN:  159726003
PHILADELPHIA  PA               Phone: 215 467-5875   Sex: M   Race: B
PLA/DET Status:                                     Date of Birth: 03/27/90
Mother:  KAREN EDWARDS         Inst. PO:            Arrest Date:
Father:  TYRONE WISE           PO:                  Filing Date: 08/02/02
Petition Number: D67100208     DC Number:           SID Number: 26087571    OTN:

| Grade | Sec # | Charge Description | Grade | Sec # | Charge Description |
|-------|-------|-------------------|-------|-------|-------------------|
|       |       | INABILITY PAR/CUST PROV |  |  |  |

| Date | Disposition | Judge or Master |
|------|-------------|-----------------|
| 12/05/07 | DISCHARGED FROM COMMITMENT | HONORABLE DANIEL ANDERS |
| 01/05/05 | D.H.S. SUPERVISION | HONORABLE RAMY I. DJERASSI |
| 08/30/02 | COMMIT TO D.H.S. | MASTER |
| 08/23/02 | TEMPORARY COMMITMENT TO DHS | HONORABLE NICHOLAS DALESSANDRO |

# EXHIBIT E



# First Judicial District of Pennsylvania
## Court Summary

**Wise, Tyrone**
Philadelphia, PA  19146
Aliases:
Donald Wise
Tyrone D. Wise
Tyrone Dennis Wise
Tyrone Wise

DOB: 06/12/1956

Sex: Male
Eyes: Brown
Hair: Black
Race: Black

### Closed

#### Montgomery

**CP-46-CR-0005027-2011**        Proc Status: Completed        DC No:        OTN:S 128682-1

Arrest Dt: 06/29/2011        Disp Date: 02/29/2012        Disp Judge: Branca, Thomas C.
Def Atty: English, William I. Jr. - (PD)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| | Sentence Dt. | Sentence Type | Program Period | Sentence Length |
| 1 | 18 § 903 | F3 | Conspiracy - Identity Theft | Guilty Plea |
| | 02/29/2012 | Confinement | Other | Min: 246 Day(s) Max: 23 Month(s) |
| | 02/29/2012 | Probation | Other | Min: 3 Year(s) Max: 3 Year(s) |
| | 02/28/2013 | Confinement | Other | Min: 85 Day(s) Max: 14 Month(s) 28 Day(s) |
| | 02/28/2013 | Probation | Other | Min: 3 Year(s) Max: 3 Year(s) |
| 5 | 18 § 903 | F3 | Conspiracy - Forgery - Unauthorized Act In Writing | Guilty Plea |
| | 02/29/2012 | Probation | Other | Min: 3 Year(s) Max: 3 Year(s) |
| | 02/28/2013 | Probation | Other | Min: 3 Year(s) Max: 3 Year(s) |

#### Philadelphia

**CP-51-CR-0433931-1990**        Proc Status: Completed        DC No: 8917049538        OTN:M 414605-2

Arrest Dt: 10/05/1989        Disp Date: 06/01/1993        Disp Judge: Geroff, Steven R.
Def Atty: Michniak, Andre - (CA)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 6106 §§ A | M1 | Carrying Firearm Without A License | Quashed |
| 2 | 18 § 6106 §§ A | M1 | Carrying Firearm Without A License | Quashed |
| 3 | 18 § 6108 | M1 | Carry Firearms Public In Phila | Quashed |

**CP-51-CR-0520511-1990**        Proc Status: Completed        DC No: 0901715565        OTN:M 436125-4

Arrest Dt: 03/30/1990        Disp Date: 11/10/1992        Disp Judge: Greenspan, Jane Cutler
Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| | Sentence Dt. | Sentence Type | Program Period | Sentence Length |
| 1 | 18 § 5104 | M2 | Resist Arrest/Other Law Enforce | Nolle Prossed |
| 2 | 18 § 2702 | | AGGRAVATED ASSAULT | Guilty Plea |
| | 05/07/2002 | Confinement | | Min: 6 Month(s) Max: 23 Month(s) |
| 3 | 18 § 2701 | | SIMPLE ASSAULT | Nolle Prossed |
| 4 | 18 § 907 | M1 | Possessing Instruments of a Crime | Nolle Prossed |

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.



**First Judicial District of Pennsylvania**
**Court Summary**

Wise, Tyrone (Continued)
  Closed (Continued)
    Philadelphia (Continued)

| Seq No | Statute | | Grade | Description | | Disposition |
|---|---|---|---|---|---|---|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 5 | 18 § 907 | | M1 | Possessing Instruments of a Crime | | Nolle Prossed |
| 6 | 18 § 6106 §§ A | | M1 | Carrying Firearm Without A License | | Nolle Prossed |
| 7 | 18 § 6106 §§ A | | M1 | Carrying Firearm Without A License | | Nolle Prossed |
| 8 | 18 § 6108 | | M1 | Carry Firearms Public In Phila | | Guilty Plea |
| | 02/25/1997 | Confinement | | | Min: 10 Month(s) Max: 23 Month(s) | |
| | 02/25/1997 | Probation | | | Min: 5 Year(s) | |
| 9 | 18 § 2705 | | M2 | Recklessly Endangering Another Person | | Nolle Prossed |
| 10 | 18 § 5104 | | M2 | Resist Arrest/Other Law Enforce | | Nolle Prossed |
| 11 | 18 § 2705 | | M2 | Recklessly Endangering Another Person | | Nolle Prossed |
| 12 | 18 § 2702 | | F2 | AGGRAVATED ASSAULT | | Guilty Plea |
| | 11/10/1992 | Confinement | | | Min: 11 Month(s) 15 Day(s) Max: 23 Month(s) | |
| | 11/10/1992 | Probation | | | Min: 2 Year(s) | |
| 13 | 18 § 2701 | | | SIMPLE ASSAULT | | Nolle Prossed |

**CP-51-CR-0309521-1996**    Proc Status: Completed    DC No: 9604007190    OTN:M 691299-0
  Arrest Dt: 02/28/1996    Disp Date: 06/18/1996    Disp Judge: Lachman, Marlene F.
  Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | | Grade | Description | | Disposition |
|---|---|---|---|---|---|---|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 1 | 18 § 3701 | | | ROBBERY | | Nolle Prossed |
| 2 | 18 § 3921 | | | THEFT BY UNLAWFUL TAKING OR DISPOSITION | | Nolle Prossed |
| 3 | 18 § 3925 | | | THEFT BY RECEIVING STOLEN PROPERTY | | Nolle Prossed |
| 4 | 18 § 3929 | | | RETAIL THEFT | | Guilty Plea |
| | 08/29/2000 | Confinement | | | Min: 6 Month(s) Max: 23 Month(s) | |
| 5 | 18 § 2706 | | M1 | Terroristic Threats | | Nolle Prossed |
| 6 | 18 § 2701 | | | SIMPLE ASSAULT | | Guilty Plea |
| | 06/18/1996 | Probation | | | Min: 2 Year(s) | |
| 7 | 18 § 2705 | | M2 | Recklessly Endangering Another Person | | Nolle Prossed |

**CP-51-MD-0003450-2012**    Proc Status: Completed    DC No:    OTN:S 128682-1
  Arrest Dt: 06/29/2011    Disp Date:    Disp Judge:
  Def Atty: English, William I. Jr. - (PD)

| Seq No | Statute | Grade | Description | Disposition |
|---|---|---|---|---|

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.



**First Judicial District of Pennsylvania**
**Court Summary**

---

**Wise, Tyrone** (Continued)
  **Closed** (Continued)
    **Philadelphia** (Continued)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 903 | | Conspiracy - Identity Theft | |
| 5 | 18 § 903 | | Conspiracy - Forgery - Unauthorized Act In Writing | |

**CP-51-MD-0003481-2013**    Proc Status: Completed    DC No:    OTN:S 128682-1

Arrest Dt: 06/29/2011    Disp Date:    Disp Judge:

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 903 | | Conspiracy - Identity Theft | |
| 5 | 18 § 903 | | Conspiracy - Forgery - Unauthorized Act In Writing | |

**MC-51-CR-0915121-1982**    Proc Status: Completed    DC No: 8217034981    OTN:M 123350-3

Arrest Dt: 09/16/1982    Disp Date: 01/17/1983    Disp Judge: Conroy, Michael
Def Atty: Mozenter, Robert B. - (PR)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| | Sentence Dt. | Sentence Type | Program Period | Sentence Length | |
| 1 | 18 § 3925 | | THEFT BY RECEIVING STOLEN PROPERTY | Guilty |
| | 01/17/1983 | Probation | | Min: 1 Year(s) | |

**MC-51-CR-0303541-1984**    Proc Status: Completed    DC No: 8401001577    OTN:M 181347-5

Arrest Dt: 03/08/1984    Disp Date: 10/15/1984    Disp Judge: Silberstein, Alan K.
Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| | Sentence Dt. | Sentence Type | Program Period | Sentence Length | |
| 1 | 75 § 3742 | | ACC INV DEATH/INJURY-STOP,IDENTIFY,ASSIST | Guilty Plea |
| | 10/15/1984 | Probation | | Min: 1 Year(s) | |

**MC-51-CR-0224821-1996**    Proc Status: Completed    DC No: 9604007190    OTN:M 691299-0

Arrest Dt: 02/28/1996    Disp Date: 03/13/1996    Disp Judge: Blount, Lynwood
Def Atty: Defender Association of Philadelphia - (PD)

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 3701 | | ROBBERY | Held for Court |
| 2 | 18 § 3921 | | THEFT BY UNLAWFUL TAKING OR DISPOSITION | Held for Court |
| 3 | 18 § 2701 | | SIMPLE ASSAULT | Held for Court |
| 4 | 18 § 2706 | M1 | Terroristic Threats | Held for Court |
| 5 | 18 § 3929 | | RETAIL THEFT | Held for Court |

---

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.



## First Judicial District of Pennsylvania
## Court Summary

**Wise, Tyrone (Continued)**
  **Closed (Continued)**
    **Philadelphia (Continued)**

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 6 | 18 § 3925 | | THEFT BY RECEIVING STOLEN PROPERTY | Held for Court |
| 7 | 18 § 2705 | M2 | Recklessly Endangering Another Person | Held for Court |

**MC-51-CR-0104741-2002**        Proc Status: Completed              DC No: 0217001460    OTN:N 122113-5

  Arrest Dt: 01/09/2002         Disp Date: 04/12/2002         Disp Judge: Moore, Jimmie

  Def Atty: Boyle, Michael P. - (CA)

| Seq No | Statute | | Grade | Description | | Disposition |
|--------|---------|--|-------|-------------|--|-------------|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 1 | 35 § 780-113 §§ A16 | | M | Int Poss Contr Subst By Per Not Reg | | Guilty |
| | 04/12/2002 | Confinement | | | Min: 5 Month(s) Max: 6 Month(s) | |

  **Archived**

|  |  |
|--|--|
| **MC-51-CR-0915131-1982** | Comm. v. Wise, Tyrone |
| **MC-51-CR-0915141-1982** | Comm. v. Wise, Tyrone |
| **MC-51-CR-1003611-1989** | Comm. v. Wise, Tyrone |
| **MC-51-CR-0330331-1990** | Comm. v. Wise, Tyrone |
| **MC-51-CR-0330341-1990** | Comm. v. Wise, Tyrone |

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.

# EXHIBIT F

Page 73

[1] correct?

[2] **A.**    Towards me, yeah.

[3] **Q.**    Okay.  And at this point Mr. Wise and this other

[4] unknown male, they weren't outside, correct?

[5] **A.**    Not that I seen.

[6] **Q.**    Okay.  And when you came down, after you heard

[7] these personal insults, which one was about your hair,

[8] right?

[9] **A.**    Yes.

[10] **Q.**    And the other one was referring to your

[11] sexuality, calling you a fagot, things of that nature.

[12] Correct?

[13] **A.**    Yes.

[14] **Q.**    Homophobic slurs is how you described them to

[15] the Court?

[16] **A.**    Yes.

[17] **Q.**    And that's the homophobic slurs and your hair;

[18] is that right?

[19] **A.**    Yes.

[20] **Q.**    Okay.  And in return you told the Court that you

[21] got upset and just started yelling back.  Correct?

[22] **A.**    Yes.

[23] **Q.**    And in the same volume and tone that you heard

[24] before you came down, right?

[25] **A.**    Huh?

Page 74

[1] **Q.**    Let me rephrase.

[2]    You were yelling just as loud as Ms. Palmer and

[3] your mother were earlier, if not louder?

[4] **A.**    No, not as loud.

[5] **Q.**    Not as loud?  Loud enough for someone inside

[6] their house, in their living room, to hear you yelling,

[7] correct?

[8] **A.**    Just loud enough for them right next door to

[9] hear me.

[10] **Q.**    Okay.  And Ms. Palmer's door, at the time did

[11] you make any observations of it?  Was it open at the

[12] time you were arguing with Amber?

[13] **A.**    No.

[14] **Q.**    It was closed?

[15] **A.**    Yes.

[16] **Q.**    You remember that?  Where were you standing when

[17] you made that observation?

[18] **A.**    At our steps.

[19] **Q.**    At your mutual steps?

[20] **A.**    When I came outside?

[21] **Q.**    Yes.

[22] **A.**    Yes.

[23] **Q.**    Okay.  And you got so upset that you made

[24] derogatory comments about Ms. Palmer's faith being

[25] Muslim, didn't you?

Page 75

[1] **A.**    No.

[2] **Q.**    You didn't?  Didn't you call her a "Mummy?"

[3] **A.**    Oh, yes.

[4] **Q.**    Isn't that in reference to how she was dressed,

[5] wearing a Muslim garb?

[6] **A.**    Yes.

[7] **Q.**    So you did make derogatory terms about her

[8] faith, did you not?

[9] **A.**    Yes.

[10] **Q.**    And you yelled that pretty loud, didn't you?

[11] **A.**    I was responding back to what she was saying

[12] about me.

[13] **Q.**    I understand you're responding, sir.

[14]    What's your preferred pronoun?  I'm sorry.

[15] **A.**    Either or.

[16] **Q.**    So if I call you sir, does it insult you?

[17] **A.**    No.

[18] **Q.**    Okay.  Earlier you told the Court that you were

[19] yelling loud enough so the people in Ms. Palmer's house

[20] could hear you; isn't that what you said?

[21] **A.**    I remember I said for them to hear me right next

[22] door.

[23] **Q.**    Okay.  Loud enough so they could hear you.  And

[24] when you were yelling about, making derogatory terms

[25] about her faith, being a Mummy, being a Muslim, it was

Page 76

[1] after that that these two individuals came outside of

[2] the house, correct?

[3] **A.**    Yes.

[4] **Q.**    Okay.  Now, you testified on direct that Ms.

[5] Palmer had said to you that she's got someone to eff

[6] you up, correct?

[7] **A.**    Yes.

[8] **Q.**    Okay.  But Ms. Palmer, she never went inside the

[9] house; isn't that right?

[10] **A.**    She went to the door to yell for them to come

[11] outside.

[12] **Q.**    The door was closed, right?

[13] **A.**    She knows how to open the door.

[14] **Q.**    Did she open the door?

[15] **A.**    I would guess so.

[16] **Q.**    Well, why are you guessing, sir?  Did you see

[17] her open the door or not?

[18] **A.**    I wasn't looking.  I wasn't paying attention to

[19] them no more.

[20] **Q.**    Okay.  Remember I asked you similar questions at

[21] the preliminary hearing?  And you told the Court then

[22] that Ms. Palmer went inside.  Remember that?

[23] **A.**    Yeah.

[24] **Q.**    But today you're saying you didn't see whether

[25] or not she went inside at all, right?

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 31, 2024, the foregoing Defendant's Sentencing Memorandum

was filed via the Court's CM/ECF system, is available for viewing and downloading, and, as

such, was served upon the below counsel:

> Kevin Jayne, Esq.
> Assistant U.S. Attorney
> Kevin.Jayne@usdog.gov

*/s/ Susan M. Lin*
Susan M. Lin
